UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

|  |  |
|---|---|
| ASHLEY J., parent and next friend of K.A., a minor, | |
| Plaintiffs, | Case No. 23-cv-12861 |
| v. | Honorable Robert J. White |
| GRETCHEN WHITMER, et al., | |
| Defendants. | |

## OPINION AND ORDER GRANTING IN PART AND DENYING IN PART THE DISTRICT DEFENDANTS' MOTION TO PARTIALLY DISMISS THE AMENDED COMPLAINT

I.      Introduction

Ashley J. commenced this action for judicial review under the Individuals with Disabilities Education Act ("IDEA") on behalf of her minor daughter, K.A. The amended complaint alleges, among other things, that a state administrative law judge erroneously concluded that Ashley J. failed to meet her burden of showing that K.A. has a disability entitling her to special education services under the IDEA. It also names the Detroit Public Schools Community District, the district's superintendent, Dr. Nikolai Vitti, and the district's general counsel, Jenice Mitchell Ford, as party defendants (the "District Defendants").

Before the Court is the District Defendants' motion to partially dismiss the amended complaint. (ECF No. 25).  Ashley J. responded in opposition. (ECF No. 27).  The District Defendants filed a reply. (ECF No. 33).  The Court will decide the motion without a hearing pursuant to E.D. Mich. LR 7.1(f)(2).  For the following reasons, the motion is granted in part and denied in part.

II.   Background

   A.   *Factual History*

Ashley J. is K.A.'s mother, a 10-year old African-American child enrolled as a student in the Detroit Public Schools Community District. (ECF No. 22, PageID.708, ¶ 21).  She maintains that K.A. is autistic. (*Id.*, PageID.728, ¶ 71). Ashley J. requested that school personnel evaluate K.A. to determine her eligibility for special-education services because of her low standardized test scores and inability to read and write at grade level. (*Id.*, PageID.732, 734, ¶¶ 81, 88; ECF No. 1, PageID.126-27).  The school district rejected Ashley J.'s request on the ground that other "interventions" might obviate the need for specialized placement. (ECF No. 1, PageID.126).

Ashley J. filed an IDEA administrative due process complaint against the school district on December 13, 2022. (ECF No. 22, PageID.734, ¶ 89).  The Michigan Department of Education requested a hearing before the Michigan Office of Administrative Hearings and Rules. (ECF No. 1-1, PageID.97).  An administrative

2

law judge ("ALJ") conducted an evidentiary due process hearing on May 22-24, 2023. (*Id.*, PageID.98).

In an August 28, 2023 decision and order, the ALJ concluded that (1) Ashley J. failed to demonstrate that the district "overlooked clear signs of disability," and (2) the district had "no obligation to evaluate" K.A. "to determine [her] possible eligibility for special education services" because Ashley J. failed to "meet her burden of proving that" K.A. "[h]as a disability." (ECF No. 1-1, PageID.112-13). Ashley J. contests both these findings.

### B.   Procedural History

Ashley J. filed this lawsuit under the IDEA seeking judicial review of the ALJ's decision and order. (ECF No. 1).  Aside from challenging the ALJ's findings, the amended complaint also alleges that the District Defendants violated K.A.'s rights under the IDEA, the Americans with Disabilities Act of 1990, the Rehabilitation Act of 1973, the Fourteenth Amendment to the United States Constitution, and Article VIII, § 2 of the Michigan Constitution. (ECF No. 22, PageID.791-96, ¶¶ 228-46).  The District Defendants now move to dismiss the causes of action asserted against them in the amended complaint. (ECF No. 25).

## III.   Legal Standards

When reviewing a motion to dismiss the complaint for failing to state a claim, the Court must "construe the complaint in the light most favorable to the plaintiff

and accept all factual allegations as true." *Daunt v. Benson*, 999 F.3d 299, 308 (6th Cir. 2021) (cleaned up); *see also* Fed. R. Civ. P. 12(b)(6). "The factual allegations in the complaint need to be sufficient to give notice to the defendant as to what claims are alleged, and the plaintiff must plead sufficient factual matter to render the legal claim plausible." *Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010) (quotation omitted). The Court may consider "exhibits attached to the complaint" to decide the motion. *Amini v. Oberlin College*, 259 F.3d 493, 502 (6th Cir. 2001).

IV.     Analysis

      A.     *Individuals with Disabilities Education Act*

The IDEA mandates that children with disabilities receive special-education services and establishes administrative remedies to achieve that aim. *Forest Grove Sch. Dist. v. T.A.*, 557 U.S. 230, 245 (2009); *Covington v. Knox Cty. Sch. Sys.*, 205 F.3d 912, 915 (6th Cir. 2000). The IDEA authorizes states to receive federal funding so they can provide a "free appropriate public education" ("FAPE") to children with certain physical or intellectual disabilities. 20 U.S.C. §§ 1412(a)(1)(A), 1401(3)(A)(i). FAPE requires "special education and related services," which includes (1) an "instruction" component tailored to meet a child's educational needs, and (2) a "supportive services" component that enables the child to receive instruction. 20 U.S.C. § 1401(9), (26), (29).

The IDEA creates a formal administrative process to adjudicate disputes. *See* 20 U.S.C. § 1415(f)-(g). A child's parent or guardian may file an administrative complaint with the local or state educational agency challenging whether the child is indeed receiving a FAPE. 20 U.S.C. §§ 1415(b)(6)(A), (f)(1)(A); *see also* 29 U.S.C. § 1401(23)(B) (including "guardian" in the statutory term "parent"). A private right of action exists for "any party unhappy with the outcome of the administrative process" to "seek judicial review by filing a civil action in state or federal court." *Sophie G. v. Wilson Cty. Schs.*, 742 F. App'x 73, 76 (6th Cir. 2018); *see also Traverse Bay Area Intermediate Sch. Dist. v. Mich. Dep't of Educ.*, 615 F.3d 622, 629-30 (6th Cir. 2010); 20 U.S.C. § 1415(i)(2)(A).

Since the IDEA contemplates that the child's parent or guardian will be squaring off against the "local educational agency" during the administrative process, 20 U.S.C. §§ 1415(b)(6)(A), (f)(1)(A), only those parties may be "aggrieved by the findings and decision" of the administrative hearing officer and only they may be parties to "a civil action with respect to the [administrative] complaint . . ." 20 U.S.C. § 1415(i)(2)(A); *see also Stanek v. St. Charles Cmty. Unit Sch. Dist. #303*, 783 F.3d 634, 640 (7th Cir. 2015) (stating that the "IDEA designates the 'local educational agency' as the proper defendant."); *Anchorage Sch. Dist. v. M.P.*, 689 F.3d 1047, 1054 (9th Cir. 2012) (observing that either the "parents or the school district . . . may seek judicial review in state or federal court" under the IDEA);

5

*Maroni v. Pemi-Baker Reg'l Sch. Dist.*, 346 F.3d 247, 252 (1st Cir. 2003) ("Congress sought to confer the right to judicial review of due process hearings upon all parties involved in such hearings: school districts, parents, and children."); *cf. J.S. v. N.Y. State Dep't of Corr.*, 76 F.4th 32, 43 (2d Cir. 2023) (holding that the IDEA's "provisions allow only the 'parent' and 'public agency' to present a due process complaint about the provision of a FAPE to a child with a disability.").

Because Dr. Vitti and Ford were not parties to the administrative complaint they cannot be subject to this private "civil action . . . respect[ing]" that same pleading. 20 U.S.C. § 1415(i)(2)(A). Insofar as the IDEA claim is asserted against them it must be dismissed. The portion of the claim asserted against the district may proceed.[1]

## B. Federal Antidiscrimination Statutes

Title II of the Americans with Disabilities Act prohibits state and local entities from excluding individuals with disabilities from their "services," "programs," and

---

[1] The District Defendants argue that portions of the IDEA claim are not fully exhausted because Ashley J. did not raise K.A.'s entitlement to (1) placement in a private special education school, or (2) compensatory education services beyond the 2021-22 and 2022-23 academic years, at the due process hearing. (ECF No. 25, PageID.835-36). Because the Court lacks access to the full administrative record at this juncture, it will reserve decision on the exhaustion question for summary judgment. *See Parker v. W. Carroll Special Sch. Dist.*, No. 21-5700, 2022 U.S. App. LEXIS 6572, at *9 (6th Cir. Mar. 14, 2022) (holding that "the district court was not precluded from revisiting the exhaustion issue on a more developed record at the summary-judgment stage" of an IDEA case).

"activities." 42 U.S.C. § 12132; *see also Y.A. v. Hamtramck Pub. Sch.*, 137 F.4th 862, 869 (6th Cir. 2025). The statute covers state and local governments as well as "their instrumentalities." *Y.A.*, 137 F.4th at 869; *see also* 42 U.S.C. § 12131(1)(A)-(B).

Section 504 of the Rehabilitation Act forbids excluding persons with disabilities from participating in, being denied the benefits of, or being subjected to discrimination "under any program or activity receiving Federal financial assistance . . ." 29 U.S.C. § 794(a). The statute applies to entities such as "a department, agency, special purpose district, or other instrumentality of a State or of a local government." 29 U.S.C. § 794(b)(1)(A).

"Claims brought under the ADA and Section 504 generally are evaluated together." *M.G. ex rel. C.G. v. Williamson Cnty. Schs.*, 720 F. App'x 280, 287 (6th Cir. 2018); *see also Knox Cnty. v. M.Q.*, 62 F.4th 978, 1000 (6th Cir. 2023). "Each Act allows disabled individuals to sue certain entities . . . [who] discriminate against them . . . because of their disability." *Gohl v. Livonia Pub. Sch. Sch. Dist.*, 836 F.3d 672, 681 (6th Cir. 2016). And each statute authorizes lawsuits against public officials acting in their official capacities.[2] *See Everson v. Leis*, 556 F.3d 484, 501

---

[2] The District Defendants appear to disagree on this well-settled point. (ECF No. 25, PageID.837-39) (arguing that individual employees or supervisors cannot be held personally liable under the ADA and the Rehabilitation Act). But it seems more likely that they fail to appreciate the distinction between lawsuits brought against

n.7 (6th Cir. 2009) ("the proper defendant under a Title II claim is the public entity or an official acting in his official capacity."); *see also Carten v. Kent State Univ.*, 282 F.3d 391, 396-98 (6th Cir. 2002) (holding that official capacity claims against individual public officials is permissible under both the ADA and the Rehabilitation Act).

A plausible claim under Title II of the ADA requires a showing that (1) K.A. has a disability; (2) she was otherwise qualified to participate in a public program; and (3) she was excluded from participation in the program or discriminated against by a public entity because of her disability. 42 U.S.C. § 12132; *see Anderson v. City of Blue Ash*, 798 F.3d 338, 357 (6th Cir. 2015).   Section 504 of the Rehabilitation Act requires the same elements; the only difference is that the alleged discrimination must be "solely" because of the disability. 29 U.S.C. § 794; *S.S. v. E. Ky. Univ.*, 532 F.3d 445, 452-53 (6th Cir. 2008).   Both statutes define "disability" as "a physical or mental impairment that substantially limits one or more major life activities." 29 U.S.C. § 705(9)(B); 42 U.S.C. § 12102(1)(A).

---

public officials in their *individual capacities* as opposed to *official capacities*. Individual capacity claims are prohibited under both Title II of the ADA and the Rehabilitation Act. *See M.J. v. Akron City Sch. Dist. Bd. of Educ.*, 1 F.4th 436, 452 n.9 (6th Cir. 2021) ("Neither the ADA nor the Rehabilitation Act supports a claim against a public official acting in his or her individual capacity.").  Official capacity claims, as noted above, are permitted.

In this case, the antidiscrimination claims falter at the outset because the amended complaint fails to plausibly establish that K.A. is disabled. Ashley J. alleges that K.A.'s *biological brother* is autistic; that K.A. is a "student with *suspected* disabilities"; and that K.A. "must be tested for autism because autism is a genetic disability in her family." (ECF No. 22, PageID.728, 763, 797, ¶¶ 71, 160, 248) (emphasis added). But the amended complaint never asserts that K.A. is *herself* autistic or that she suffers from a mental impairment that substantially limits a major life activity. *See Al-Janabi v. Wayne State Univ.*, No. 21-1399, 2021 U.S. App. LEXIS 37051, at *5-6 (6th Cir. Dec. 15, 2021) (affirming Rule 12(b)(6) dismissal of ADA and Rehabilitation Act claims where the plaintiff "neglect[ed] to identify one of his disabilities" and "did not allege that his impairments substantially limit a major life activity."); *see also Fritz v. Michigan*, 747 F. App'x 402, 405 (6th Cir. 2018) (affirming dismissal of ADA and Rehabilitation Act claims where the complaint "contain[ed] no facts that describe[d] the nature of her disability."); *Williams v. New York City Dep't of Educ.*, No. 18-11621, 2020 U.S. Dist. LEXIS 32403, at *10 n.6 (S.D.N.Y. Feb. 25, 2020) (holding that the plaintiff's allegations of an "undiagnosed disability" are "insufficient for the Court to conclude that she has plausibly alleged a disability within the meaning of the ADA."); *Taggart v. Moody's Investors Serv.*, No. 06-3388, 2007 U.S. Dist. LEXIS 52765, at *22 (S.D.N.Y. Jul. 16, 2007) (same); 29 C.F.R. § 1630.2(h)(2).

Because of this fundamental deficiency in her pleadings, Ashley J. is not entitled to relief under Title II of the ADA or section 504 of the Rehabilitation Act.

C.    *Fourteenth Amendment to the United States Constitution*

The Fourteenth Amendment to the United States Constitution prohibits states from "depriv[ing] any person of life, liberty, or property, without due process of law" and "denyin[g] to any person within [their] jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1.   Section 5 to the Fourteenth Amendment empowers Congress to "enforce this article through appropriate legislation." *Id.* at § 5.   Congress enacted 42 U.S.C. § 1983 pursuant to its power under section 5 to enforce the Amendment's substantive provisions. *See Ngiraingas v. Sanchez*, 495 U.S. 182, 187 (1990).   The statute precludes any "person" acting "under color" of state law from depriving "any citizen of the United States or other person within the jurisdiction thereof . . . of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983.

Ashley J. maintains that the Fourteenth Amendment's procedural due process guarantees require the District Defendants to provide her with free copies of the administrative docket sheet and hearing transcripts.   She also alleges that the District Defendants are somehow liable for the ALJ's racial bias towards her during the administrative proceedings.   None of these contentions have merit.

10

To begin with, procedural due process does not confer any right upon civil litigants to obtain free transcripts. *See Doe v. Tennessee*, No. 19-6019, 2020 U.S. App. LEXIS 30014, at *11 (6th Cir. Sep. 18, 2020) (holding that "the Federal Constitution does not forbid the charging of a fee for a transcript of a civil matter.") (quotation omitted); *see also Hill v. Michigan*, 488 F.2d 609, 610 (6th Cir. 1973) (per curiam) (same). And even if it did, the amended complaint fails to plausibly allege how each District Defendant deprived Ashley J. of that right. *See Top Flight Ent. Ltd. v. Schuette*, 729 F.3d 623, 634 (6th Cir. 2013) ("A plaintiff must allege facts showing how a state official is connected to, or has responsibility for, the alleged constitutional violations."); *see also Floyd v. Cnty. of Kent*, 454 F. App'x 493, 499 (6th Cir. 2012) (holding that public officials "must have, by virtue of the office, some connection with the alleged unconstitutional act or conduct of which the plaintiff complains.").

The same flaw resurfaces when addressing the ALJ's supposed bias: the complaint lacks any plausible allegations demonstrating how each District Defendant is responsible for the ALJ's misconduct. *See Top Flight*, 729 F.3d at 634; *Floyd*, 454 F. App'x at 499.

For all these reasons, the Fourteenth Amendment claim against the District Defendants cannot withstand Rule 12(b)(6) dismissal.

D.    *The Michigan Constitution*

11

Lastly, Ashley J. maintains that the District Defendants violated Article VIII, § 2 of the Michigan Constitution.  That provision directs the Michigan Legislature to "maintain and support a system of free public elementary and secondary schools as defined by law." Mich. Const. art. VIII, § 2.  Michigan courts, however, do not recognize a "direct cause of action arising under" Article VIII, § 2 of the Michigan Constitution. *L.M. v. State*, 307 Mich. App. 685, 696 (2014).  So Ashley J. cannot resort to the state constitution to obtain the relief she seeks in the amended complaint.  Accordingly,

IT IS ORDERED that the District Defendants' motion to partially dismiss the amended complaint (ECF No. 25) is granted in part and denied in part.

IT IS FURTHER ORDERED that the motion is granted as to the ADA, the Rehabilitation Act, and the federal and state constitutional claims, as well as the IDEA claim insofar as it is asserted against Dr. Vitti and Ford.

IT IS FURTHER ORDERED that the motion is denied as to the IDEA claim insofar as it is asserted against the district.

IT IS FURTHER ORDERED that the Clerk of the Court is directed to terminate Dr. Vitti and Ford from the docket as party defendants to this action.

Dated: September 9, 2025                    s/ Robert J. White
                                           Robert J. White
                                           United States District Judge