UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| ASHLEY J., parent and next friend of K.A., a minor,<br><br>Plaintiffs,<br><br>v.<br><br>GRETCHEN WHITMER, et al.,<br><br>Defendants. | Case No. 23-cv-12861<br><br>Honorable Robert J. White |

**OPINION AND ORDER GRANTING THE DETROIT PUBLIC SCHOOLS COMMUNITY DISTRICT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFFS' CROSS-MOTION FOR SUMMARY JUDGMENT**

## I. Introduction

Ashley J. commenced this action against the Detroit Public Schools Community District for judicial review under the Individuals with Disabilities Education Act ("IDEA") on behalf of her minor daughter, K.A. The amended complaint alleges, among other things, that the District failed to provide K.A. with a "free appropriate public education" under the statute.

Before the Court are the parties' cross-motions for summary judgment as well as the associated responses and replies. (ECF Nos. 58-60, 62, 66-67). The Court will decide the cross-motions without a hearing pursuant to E.D. Mich. LR 7.1(f)(2). For

the following reasons, (1) the District's motion for summary judgment is granted, and (2) Ashley J.'s cross-motion for the same relief is denied.

## II. Background

### *A. Factual History*

Ashley J. is K.A.'s mother, a 10-year old African-American child enrolled as a student in the Detroit Public Schools Community District. (ECF No. 22, PageID.708, ¶ 21). She maintains that K.A. is autistic.[1] (*Id.*, PageID.728, ¶ 71). In a series of triplicate letters addressed to the District's superintendent, K.A.'s principal, and her third-grade reading teacher, Ashley J. requested that school personnel evaluate K.A. to determine her eligibility for special-education services because of her low standardized test scores and inability to read and write at grade level. (ECF No. 57-5, PageID.3183-84, 3187-88, 3191-92). At first, the District rejected the request on the ground that (1) K.A. did not exhibit "academic concerns in the classroom," and (2) other "interventions" might obviate the need for specialized placement. (ECF No. 57-5, PageID.3084). But K.A.'s principal invited Ashley J. to meet with him and K.A.'s teachers to discuss her concerns anyway. (ECF No. 57-4, PageID.2906, Tr. 349:10-352:5). That meeting was supposed to

[1] There is no evidence that K.A. was ever diagnosed with autism or that she ever exhibited autistic-related behaviors. There is only Ashley J.'s testimony that K.A.'s two year-old brother is autistic. (ECF No. 57-4, PageID.2959, Tr. 53:1-5).

occur on December 12, 2022. (*Id.*, PageID.2834, Tr. 468:17-470:17). Ashley J. never showed. (*Id.*, PageID.2906, Tr. 351:7-11, 23, Tr. 352:1-5).

The next day, she filed an IDEA administrative due process complaint against the District. (ECF No. 57-2, PageID.2600, ¶ 34). The Michigan Department of Education requested a hearing before the Michigan Office of Administrative Hearings and Rules. (*Id.*, PageID.1504). An administrative law judge ("ALJ") conducted an evidentiary due process hearing on May 22-24, 2023. (*Id.*, PageID.1505).

In an August 28, 2023 decision and order, the ALJ concluded that (1) Ashley J. failed to show that the District neglected to identify K.A. as a student who may need special education services, (2) the District had no obligation to evaluate K.A. under the IDEA, and (3) Ashley J. failed to establish that the District denied K.A. a "free appropriate public education." She currently disputes all three findings.

*B. Procedural History*

Ashley J. filed this lawsuit under the IDEA seeking judicial review of the ALJ's decision and order. (ECF No. 1). Aside from challenging the ALJ's findings, the amended complaint alleged, among other things, that the District (as well as its superintendent and general counsel) violated K.A.'s rights under the IDEA, the Americans with Disabilities Act of 1990, the Rehabilitation Act of 1973, the

Fourteenth Amendment to the United States Constitution, and Article VIII, § 2 of the Michigan Constitution. (ECF No. 22, PageID.791-96, ¶¶ 228-46).

In a September 9, 2025 opinion and order, the Court granted in part and denied in part the District's motion to partially dismiss the amended complaint. (ECF No. 46). The Court dismissed all the causes of action except for the IDEA claim asserted against the District. (*Id.*, PageID.1256-58, 1264). The parties now cross-move for summary judgment based on the administrative record. (ECF Nos. 58-59).

## III. Standard of Review

District courts review state administrative IDEA determinations under a "modified de novo" standard. *L.H. v. Hamilton Cnty. Dep't of Educ.*, 900 F.3d 779, 790 (6th Cir. 2018). This level of review requires district courts to independently re-examine the record and make findings based upon a preponderance of the evidence. *Burilovich v. Bd. of Educ. of Lincoln Consol. Schs.*, 208 F.3d 560, 565-66 (6th Cir. 2000); *see also* 20 U.S.C. § 1415(i)(2)(C). Still, district courts must afford "due weight" to an ALJ's determinations. *L.H.*, 900 F.3d at 790. "Due weight" means (1) setting aside an ALJ's findings only where "the evidence before the court is more likely than not to preclude the administrative decision from being justified based on the agency's presumed educational expertise, a fair estimate of the worth of the testimony, or both," and (2) deferring to the ALJ on questions involving educational expertise. *Burilovich*, 208 F.3d at 567.

## IV. Analysis

### *A. IDEA Overview*

The IDEA mandates that children with disabilities receive special-education services and it establishes administrative remedies to achieve that aim. *Forest Grove Sch. Dist. v. T.A.*, 557 U.S. 230, 245 (2009); *Covington v. Knox Cty. Sch. Sys.*, 205 F.3d 912, 915 (6th Cir. 2000). The IDEA authorizes states to receive federal funding so they can provide a "free appropriate public education" ("FAPE") to children with certain physical or intellectual disabilities. 20 U.S.C. §§ 1412(a)(1)(A), 1401(3)(A)(i). FAPE requires "special education and related services," which includes (1) an "instruction" component tailored to meet a child's educational needs, and (2) a "supportive services" component that enables the child to receive educational instruction. 20 U.S.C. § 1401(9), (26), (29).

The "primary vehicle for implementing a FAPE is the individualized educational program, or IEP." *J.L. v. Williamson Cnty.*, No. 23-5704, 2024 U.S. App. LEXIS 19406, at *4 (6th Cir. Aug. 2, 2024) (quotation omitted); *see also* 20 U.S.C. §§ 1412(a)(4), 1414(d)(2). An IEP is a document that "state[s] the student's educational status, the annual goals for the student's education, the special-educational services and aides to be provided to meet those goals, and the extent the student will be 'mainstreamed,' *i.e.*, spend time in school environments with non-disabled students." *L.H.*, 900 F.3d at 788; *see also* 20 U.S.C. § 1414(d)(1)(A). An

IEP team meeting is a conference between school officials and the student's parents where the IEP is formulated. 20 U.S.C. § 1414(d)(1)(B).

The IDEA establishes a formal administrative process to adjudicate disputes. *See* 20 U.S.C. § 1415(f)-(g). A child's parent or guardian may file an administrative complaint with the local or state educational agency challenging whether the child is receiving a FAPE. 20 U.S.C. §§ 1415(b)(6)(A), (f)(1)(A); *see also* 29 U.S.C. § 1401(23)(B) (including "guardian" in the statutory term "parent"). A private right of action exists for "any party unhappy with the outcome of the administrative process" to "seek judicial review by filing a civil action in state or federal court." *Sophie G. v. Wilson Cty. Schs.*, 742 F. App'x 73, 76 (6th Cir. 2018); *see also Traverse Bay Area Intermediate Sch. Dist. v. Mich. Dep't of Educ.*, 615 F.3d 622, 629-30 (6th Cir. 2010); 20 U.S.C. § 1415(i)(2)(A).

Since the IDEA contemplates that the child's parent or guardian will be squaring off against the "local educational agency" during the administrative process, 20 U.S.C. §§ 1415(b)(6)(A), (f)(1)(A), only those parties may be "aggrieved by the findings and decision" of the administrative hearing officer and only they may be parties to "a civil action with respect to the [administrative] complaint . . ." 20 U.S.C. § 1415(i)(2)(A); *see also Stanek v. St. Charles Cmty. Unit Sch. Dist. #303*, 783 F.3d 634, 640 (7th Cir. 2015) (stating that the "IDEA designates the 'local educational agency' as the proper defendant."); *Anchorage Sch. Dist. v. M.P.*, 689

F.3d 1047, 1054 (9th Cir. 2012) (observing that either the "parents or the school district . . . may seek judicial review in state or federal court" under the IDEA); *Maroni v. Pemi-Baker Reg'l Sch. Dist.*, 346 F.3d 247, 252 (1st Cir. 2003) ("Congress sought to confer the right to judicial review of due process hearings upon all parties involved in such hearings: school districts, parents, and children."); *cf. J.S. v. N.Y. State Dep't of Corr.*, 76 F.4th 32, 43 (2d Cir. 2023) (holding that the IDEA's "provisions allow only the 'parent' and 'public agency' to present a due process complaint about the provision of a FAPE to a child with a disability.").

*B. The IDEA's "Child-Find" Requirement*

Ashley J. first contests the ALJ's "child-find" ruling. (ECF No. 58, PageID.3587-3612). The IDEA mandates that the states promulgate "child-find" requirements for local school districts. *Bd. of Educ. v. L.M.*, 478 F.3d 307, 313 (6th Cir. 2007). That means "schools must have policies and procedures in place to identify, locate, and evaluate children with disabilities who need special education and related services." *Id.*; *see also* 34 C.F.R. § 300.111(a)(1). The "child-find" requirement even protects "children who are only suspected of having a disability, although they are progressing from grade to grade." *L.M.*, 478 F.3d at 313; *see also* 34 C.F.R. § 300.111(c).

To establish a "child-find" violation, the claimant "must show that school officials overlooked clear signs of disability and were negligent in failing to order

testing, or that there was no rational justification for not deciding to evaluate." *L.M.*, 478 F.3d at 313 (quotation omitted); *see also Ja.B. v. Wilson Cnty. Bd. of Educ.*, 61 F.4th 494, 502 (6th Cir. 2023).

The record shows that, prior to mailing the triplicate letters to the District's superintendent, K.A.'s principal, and her third-grade reading teacher, Ashley J. never raised concerns about the disparity between K.A.'s in-school academic performance and her inability to perform certain tasks at home. (ECF No. 57-5, PageID.3183-84, 3187-88, 3191-92; *see also* ECF No. 57-4, PageID.2822, 2827, 2833-34, 2867, 2895, 2984, 2989, Tr. 305:11-306:15, Tr. 421:17-22, Tr. 442:3-23, Tr. 466:23-467:11, Tr. 193:7-16, Tr. 195:25-196:23, Tr. 151:17-152:6, Tr. 172:23-173:16). K.A.'s principal, teachers, and the District's school psychologist all testified that they first became aware of Ashley J.'s concerns only after receiving the letters. (ECF No. 57-4, PageID.2822, 2833-34, 2895, Tr. 305:18-23, Tr. 421:17-22, Tr. 466:23-467:11). And K.A.'s second and third-grade standardized test scores all indicate marked *improvements* in reading and math. (ECF No. 57-5, PageID.3088-89, 3092-93, 3096-97, 3100-01). So it is difficult to conceive how the District should have known that K.A. was struggling academically.

As the ALJ accurately noted:

> Instead of suggesting disability, Student's i-Ready tests demonstrated significant growth from the beginning to the middle and end of her second and third-grade school years. For both reading and math, Student exceeded or was on track to

> exceed her annual growth goal. For third-grade math, Student's i-Ready scores between the first and second diagnostic test improved more than any other student in her class. If anything, this data suggests Student was able to learn at a rate equal to or greater than what would be expected of a typical student.

(ECF No. 57-2, PageID.2601).

Ashley J. contests this view of the record. She purports to have made "numerous ongoing requests" to the District to evaluate K.A. for special education services. (ECF No. 60, PageID.3812, 3823-25). The evidence does not support this assertion. Ashley J. testified that she had repeatedly asked K.A.'s kindergarten teacher for assistance with K.A.'s math proficiency during the 2019-2020 academic year. (ECF No. 57-4, PageID.2957, Tr. 43:17-25). But the ALJ properly found that her unverified testimony was "not otherwise supported by any reliable evidence." (ECF No. 57-2, PageID.2600). And even if Ashley J.'s conversations with the kindergarten teacher did provide adequate notice to the District about her concerns regarding K.A.'s performance, the ALJ correctly determined that any potential "child-find" violation fell outside the two-year statute of limitations for filing a related due process complaint. (ECF No. 57-2. PageID.2600). *See* 20 U.S.C. § 1415(f)(3)(C); 34 C.F.R. § 300.507(a)(2).

Ashley J. also testified that K.A. could not complete her third-grade homework or perform kindergarten-level work at home. (ECF No. 57-4, PageID.2952, 2954, Tr. 24:7-15, Tr. 33:7-19). Here, too, the ALJ evaluated her

testimony and discounted it. He concluded that Ashley J.'s statements conflicted with K.A.'s standardized test results as well as her teacher's sworn testimony about her in-school performance. (ECF No. 57-2, PageID.2601). And he found that Ashley J.'s unsubstantiated testimony lacked credibility because she had lied before – she claimed to have met with K.A.'s school principal personally, describing her as a white, blonde-haired female, when the principal is an African-American male. (*Id.* n.6; *see also* ECF No. 57-4, PageID.2967, Tr. 84:10-13). Affording "due weight" to this finding, the Court sees no reason to disturb the ALJ's credibility determination on appeal. *See Knox Cnty. v. M.Q.*, 62 F.4th 978, 996 (6th Cir. 2023).

Lastly, Ashley J. argues that K.A.'s below grade-level standardized test scores provided the District with clear signs of disability. (ECF No. 58, PageID.3606-10). The ALJ disagreed with this assessment based upon the testimony elicited from K.A.'s teachers and his own educational expertise. The ALJ opined that:

> Contrary to Petitioner's argument, Student's i-Ready test results did not constitute a clear sign of disability. It is not surprising that Student's baseline in math and reading at the beginning of her second-grade year showed a "Grade K" level. Student's entire first-grade year involved only virtual instruction. All the professional educators testified credibly that virtual instruction was likely to result in learning loss for first-grade students in subsequent years. Many students also take a step back in their growth after a summer away from school. Accordingly, Student's teachers offered credible testimony that Student's i-Ready scores were not in any way remarkable or surprising. Rather, they placed Student in the middle of her class.

(*Id.*). Affording "due weight" to the ALJ's ruling, based upon his educational expertise, the preponderance of the evidence supports his determination that K.A.'s below-grade level standardized test scores did not qualify as a clear sign of disability. *See Burilovich*, 208 F.3d at 567.

And because there is no other credible evidence or verifiable proof that the District "overlooked clear signs of disability," the ALJ's decision that the District did not run afoul of the IDEA's "child-find" mandate is affirmed. *L.M.*, 478 F.3d at 313 (quotation omitted).

*C. Obligation to Evaluate K.A.*

Ashley J.'s second objection to the ALJ's decision fares no better. She argues that the District should have employed, among other things, psychoeducational assessments, cognitive functioning tests, and academic achievement tests to determine K.A.'s eligibility for special education services. (ECF No. 58, PageID.3619-28). There is one snag, though: she never consented to the District's performance of these tests.

A school district "proposing to conduct an initial evaluation to determine if the child qualifies as a child with a disability" must "obtain informed consent from the parent of such child before conducting the evaluation." 20 U.S.C. § 1414(a)(1)(D)(i)(I); *see also* 34 C.F.R. § 300.300(a)(1)(i). The school district "does

not violate" the IDEA in the event "it declines to pursue the evaluation" without parental consent. 34 C.F.R. § 300.300(a)(3)(ii).

In this case, Ashley J. admitted that she refused to sign any forms regarding K.A.'s evaluations and that she directed school officials to contact her lawyer instead. (ECF No. 57-4, PageID.2964, 2968, Tr. 71:2-4, Tr. 87:3-7, Tr. 88:14-19). The District's school psychologist confirmed that she had explained the evaluation process to Ashley J. and attempted, on several occasions, to obtain Ashley J.'s signed consent to perform the evaluation. (ECF No. 57-4, PageID.2834-35, Tr. 469:8-471:22, Tr. 473:21-474:3). No one disputes that Ashley J. ever signed the forms authorizing the District to perform the evaluation. (ECF No. 57-4, PageID.2835, Tr. 474:4-5). Nor did she attend a previously scheduled December 12, 2022 meeting with K.A.'s principal, teachers, and the District's school psychologist to discuss her concerns about K.A.'s academic performance. (ECF No. 57-2, PageID.2599, ¶¶ 29-30; ECF No. 57-4, PageID.2834, Tr. 468:17-470:17).

Ashley J. seems to argue that the District should have communicated with her lawyer – and not her – about signing the requisite authorizations. (ECF No. 60, PageID.3834). But aside from her own testimony, the record is devoid of any credible evidence that Ashley J. provided the District with her attorney's contact information. (ECF No. 57-4, PageID.2968, Tr. 87:8-9, Tr. 88:6-8). And she does not

point to any legal authority that would compel the District to affirmatively contact her attorney to discuss obtaining her consent to the evaluation.

In any event, the District never had a sufficient opportunity to speak with Ashley J.'s lawyer. She filed her due process complaint within days of informing the District she had retained counsel.[2] (ECF No. 57-2, PageID.2600, ¶ 34; *see also* ECF No. 57-4, PageID.2913, Tr. 378:18-379:9). And at that juncture, K.A.'s principal ceased all communications with Ashley J. and contacted the District's attorneys. (ECF No. 57-4, PageID.2913, Tr. 378:18-379:5).

Because Ashley J. refused her consent to the District's evaluation of K.A.'s eligibility for special education services, the District did not violate the IDEA when it declined to proceed with the evaluation.

*D. FAPE*

Ashley J. also contends that the District did not provide K.A. with a FAPE. (ECF No. 58, PageID.3629; ECF No. 60, PageID.3836-37). A child's parents carry the burden of showing – by a preponderance of the evidence – that an IEP is deficient. *See Barnett v. Memphis City Schs.*, 113 F. App'x 124, 128 (6th Cir. 2004);

---

[2] Ashley J. did not raise this argument at the due process hearing. Insofar as she contends that the District breached American Bar Association Model Rule 4.2, which pertains to communicating with another party who is represented by counsel, remedying that type of misconduct (assuming it even occurred here) is beyond the ALJ's purview and the scope of this appeal. 20 U.S.C. § 1415(f)(3)(B), (E)(i); *see also id.* at § 1415(i)(2)(A).

*see also Renner v. Bd. of Educ of the Pub. Sch. of Ann Arbor*, 185 F.3d 635, 642 (6th Cir. 1999). Ashley J. fails to meet this requirement entirely.

Since the Court already affirmed the ALJ's decision that the District did not violate the IDEA's "child-find" requirement, it must likewise concur with his ruling that the District could not have denied K.A. a FAPE. *See Ja.B.*, 61 F.4th at 504 (holding that "[b]ecause the district did not violate the IDEA's child-find mandate, the district did not deny Ja. B. a FAPE").

*E. Extended School Year (ESY) Instruction*

Next, Ashley J. asserts that the District should provide K.A. with Extended School Year instruction. (ECF No. 58, PageID.3633-35). School districts must provide Extended School Services when they are necessary to provide students with a FAPE. 34 C.F.R. § 300.106(a). This requirement is triggered only when "the child's IEP team determines that such services are necessary for the provision of FAPE to the child." *Bd. of Educ. v. L.M.*, 478 F.3d 307, 314-15 (6th Cir. 2007) (quotation omitted); *see also* 34 C.F.R. § 300.106(a). "[P]roviding an ESY is the exception and not the rule under the regulatory scheme." *Cordrey v. Euckert*, 917 F.2d 1460, 1473 (6th Cir. 1990).

In the Sixth Circuit, "the burden is on the claimant proposing an ESY to demonstrate, in a particularized manner relating to the individual child, that an ESY is necessary to avoid regression so severe that the child would not be able to catch

up during the following school year." *L.M.*, 478 F.3d at 315. That means, "[i]f the child benefits meaningfully within his potential from instruction under a proper IEP over a regular school year, then ESY service may not be required under the Act unless the benefits accrued to the child during the regular school year will be significantly jeopardized if he is not provided an ESY." *Id.* (quotation omitted). Claimants may rely upon expert opinion testimony to meet this heightened standard; they "are not required to present empirical proof of actual prior regression." *Id.*; *see also Cordrey*, 917 F.2d at 1471-72.

At the administrative hearing, Ashley J. offered no expert witness or empirical evidence demonstrating that the academic progress K.A. achieved during the academic year would be "significantly jeopardized if [she] is not provided an ESY." *L.M.*, 478 F.3d at 315 (quotation omitted). In fact, K.A.'s standardized test scores indicate marked improvement and significant year-to-year progression, which undercuts Ashley J.'s contention that ESY services are appropriate. (ECF No. 57-5, PageID.3088-89, 3092-93, 3096-97, 3100-01).

Since Ashley J. failed to meet her burden of demonstrating K.A.'s entitlement to ESY instruction, those services are not warranted based on the record.

*F. Compensatory Education*

In addition to ESY, Ashley J. seeks compensatory education services for K.A. (ECF No. 58, PageID.3630-32). An award of compensatory education services "is

an equitable remedy that a court can grant as it finds appropriate." *L.M.*, 478 F.3d at 316; *see also* 20 U.S.C. § 1415(i)(2)(C)(iii). Such an award hinges upon an "established" IDEA violation. *Woods v. Northport Pub. Sch.*, 487 F. App'x 968, 978 (6th Cir. 2012). One that must be "established" through a preponderance of the evidence. 20 U.S.C. § 1415(i)(2)(C)(iii).

Because Ashley J. proffers no evidence that the District failed to provide K.A. with a FAPE, she is not entitled to an award of compensatory education services.

*F. Other Remedies*

Finally, Ashley J. asks for two additional forms of equitable relief. Neither of them are justified. Her first request – that K.A. receive assistive technologies (like a personal computer or tape recorder) – must be denied because there is no evidence in the record showing that K.A. would be denied a FAPE if she did not have access to these devices. (ECF No. 58, PageID.3635-37).

Ashley J.'s second request is for a court order directing K.A.'s residential placement in a private special education school at the District's expense. (*Id.*, PageID.3637-38). Since she failed to ask for this relief at the administrative hearing the issue is not properly exhausted. *See F.C. v. Tenn. Dep't of Educ.*, 745 F. App'x 605, 608 (6th Cir. 2018). And Ashley J. may not petition the district court for this relief in the first instance. (ECF No. 57-2, PageID.2603) (stating that "any claims or defenses not specifically addressed are dismissed with prejudice.").

At any rate, Ashley J. is not entitled to reimbursement for private placement because, as discussed above, the ALJ correctly found that she did not carry her burden of showing that K.A. is eligible for special education services under the IDEA. (ECF No. 57-2, PageID.2602). Accordingly,

IT IS ORDERED that the District's motion for summary judgment (ECF No. 59) is granted.

IT IS FURTHER ORDERED that Ashley J.'s cross-motion for summary judgment (ECF No. 58) is denied.

Dated: September 30, 2026

s/ Robert J. White
Robert J. White
United States District Judge